2010 UT App 2

**Nadine GILLMOR, Plaintiff, Appellant, and Cross-appellee,**

v.

**FAMILY LINK, LLC, a Utah limited liability company; Doug Carl Dohring, an individual and as trustee; David K. Richards; Barry Todd Miller; Joan Ellen Miller; Laurie Ann Dohring; Kenneth W. Macey; Robin A. Macey; and John Does 1–40, Defendants, Appellees, and Cross-appellants.**

No. 20080757–CA.

Court of Appeals of Utah.

Jan. 14, 2010.

See also 121 P.3d 57.

Bruce R. Baird and Dallis A. Nordstrom, Salt Lake City, for Appellant and Cross-appellee.

Keith W. Meade, Elizabeth T. Dunning, and Edwin C. Barnes, Salt Lake City, for Appellees and Cross-appellants.

Before Judges THORNE, BENCH, and GREENWOOD.[1]

## OPINION

BENCH, Senior Judge:

¶1 Plaintiff Nadine Gillmor (Mrs. Gillmor) appeals the district court's dismissal of her claims on res judicata grounds and imposition of sanctions against her attorney under rule 11(b)(2) of the Utah Rules of Civil Procedure for filing a claim without basis in law. Defendants cross-appeal the district court's denial of sanctions under rule 11(b)(1) for filing a claim for an improper purpose. We affirm.[2]

## BACKGROUND

¶2 In 1984, Mrs. Gillmor's husband, Charles Frank Gillmor Jr. (Mr. Gillmor), brought suit against David K. Richards. Mr. Gillmor sought a prescriptive easement or irrevocable license in an attempt to access his property (the Gillmor property) by way of two private roads, which run from a nearby highway and through Richards's property (the Richards property). The parties settled the 1984 suit by entering into an Easement and Use Agreement (the easement agreement). Following the settlement, upon the parties' joint stipulation, the district court

---

1. Judges Russell W. Bench and Pamela T. Greenwood heard and voted on this case as regular members of the Utah Court of Appeals. They both retired from the court on January 1, 2010, before this decision issued. Hence, they are designated herein as Senior Judges. *See* Utah Code Ann. § 78A–3–103(2) (2008); Sup.Ct. R. of Prof'l Practice 11–201(6).

2. Because we conclude that Mrs. Gillmor's claims are barred by res judicata, we do not address Defendants' alternative argument that her claims are also barred by judicial estoppel.

dismissed with prejudice the 1984 suit on the merits.

¶ 3 In 2001, Mrs. Gillmor filed suit against the subsequent owners of the Richards property, seeking a declaration of her rights under the easement agreement.[3] Specifically, the 2001 suit concerned the authorized use of the roads to access the Gillmor property under the easement agreement. The district court's decision was appealed, and in *Gillmor v. Macey*, 2005 UT App 351, 121 P.3d 57, this court concluded that the easement agreement grants a personal easement to a limited class of people, including Mrs. Gillmor. *See id.* ¶¶ 15–23. We expressly held that Mrs. Gillmor's personal right to access the Gillmor property through the Richards property does not expand the rights of any other person to use the easements or the purposes for which the easements may be used beyond what is expressly authorized by the easement agreement. *See id.* ¶¶ 14, 23, 43. Further, this court concluded that those uses expressly authorized by the easement agreement, which would run with the property, were limited to very narrow and specific purposes. *See id.* ¶¶ 24–31. Consequently, use of the easements for purposes other than Mrs. Gillmor's own access was severely limited by the easement agreement. *See id.* ¶¶ 14, 23, 43.

¶ 4 In 2007, Mrs. Gillmor filed the present suit against Defendants, owners of the Richards property, pleading condemnation and "highway-by-public-use." *See generally* Utah Code Ann. § 72–5–104 (2009) (permitting a highway to be dedicated to public use when "continuously used as a public thoroughfare for a period of ten years"). Like the 1984 and 2001 suits, this suit concerns use of the roads over the Richards property to access the Gillmor property. But this time a public right has been asserted, rather than a private right arising out of contract or property ownership. Defendants moved the district court to dismiss, arguing that Mrs. Gillmor's claims are barred by res judicata.

¶ 5 Before the district court, both parties' arguments focused solely on whether, under the claim preclusion branch of res judicata, Mrs. Gillmor's claims could and should have been brought in either of the two prior suits. Mrs. Gillmor's attorney, Bruce R. Baird, asserted that Mrs. Gillmor's claims were subject to "narrow exceptions" to res judicata, arguing that " 'there are cases in which the doctrine of res judicata must give way to . . . overriding concerns of public policy and simple justice.' " (Quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 402–03, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) (Blackmun, J., concurring) (responding by separate concurrence to the lead opinion's rejection of an equitable exception to res judicata, *see id.* at 401, 101 S.Ct. 2424, arguing that the majority should not "close the door" to such an exception).) Mr. Baird did not cite to any specific examples of exceptions to res judicata. Rather, Mr. Baird argued that Mrs. Gillmor should be permitted to pursue these legal theories, regardless of the two prior suits, because the theories alleged are public rights that can "be brought by other members of the public." Mr. Baird supported his argument only by referencing the policies behind res judicata, arguing that these policies would not be compromised by allowing Mrs. Gillmor to pursue her present suit because "the claims brought by [Mrs. Gillmor] are claims which can be brought by other members of the public . . . so judicial economy and multiple law suits should not be implicated simply because of the identity of the Plaintiff." To emphasize his point that any member of the public could allege these legal theories, Mr. Baird stated, "[I]f the Court dismisses [Mrs. Gillmor's claims,] I'll bring [the same causes of action] in somebody else's name."

¶ 6 Mr. Baird conceded that the legal theories alleged here could have been brought in either the 1984 or 2001 suits, as they were legally and factually available at those times. Mr. Baird also speculated that these theories were omitted from earlier suits for strategic purposes, stating that simultaneously bringing a claim for a public and private right of access "would have been pretty dicey."

---

**3.** Following the 1995 passing of Mr. Gillmor, Mrs. Gillmor became the owner of the Gillmor property. After the 1984 suit, the Richards property was partitioned and sold to other persons who were named as parties in the 2001 suit and the present suit. For the reader's convenience, we refer to these parcels collectively as the Richards property.

¶ 7 Following oral argument, the district court ruled from the bench that Mrs. Gillmor's claims were barred by res judicata. The district court relied upon the preclusive effect of both the 1984 and 2001 suits. The district court found that the legal theories presented had been "legally and factually available for many decades" and reasoned that the three suits involved the same claim because each was motivated by a common goal—access to the Gillmor property. Accordingly, the district court concluded that these claims could and should have been presented in the prior suits. The district court also stated, without objection from either party, "There's no question about any of the other prongs of claim preclusion applying here."

¶ 8 Defendants then moved for sanctions under rule 11(b) of the Utah Rules of Civil Procedure. The district court imposed rule 11(b)(2) sanctions against Mr. Baird for filing a claim without basis in law because Mrs. Gillmor's claims were barred by res judicata. However, the district court declined to impose sanctions under rule 11(b)(1) for filing a claim with an improper purpose, finding no evidence that either Mrs. Gillmor or Mr. Baird acted with an improper purpose. Mrs. Gillmor appeals, and Defendants cross-appeal.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 9 Mrs. Gillmor first appeals the district court's determination that her claims are barred by the claim preclusion branch of res judicata. "Whether res judicata, and more specifically claim preclusion, bars an action presents a question of law that we review for correctness." *Mack v. Utah State Dep't of Commerce*, 2009 UT 47, ¶ 26, 221 P.3d 194 (internal quotation marks omitted).

■ ¶ 10 Mrs. Gillmor also appeals the district court's decision to impose sanctions against her attorney, Mr. Baird, under rule 11(b)(2) for filing a claim without basis in law. Defendants cross-appeal the district court's decision not to impose sanctions against both Mrs. Gillmor and Mr. Baird under rule 11(b)(1) for filing a claim with an improper purpose. "In reviewing a trial court's imposition of [rule 11] sanctions, ...

we first review the trial court's factual findings under the 'clearly erroneous' standard. We then review the trial court's legal conclusions for correctness. Finally, we review the type and amount of sanctions imposed under the abuse of discretion standard." *Pennington v. Allstate Ins. Co.*, 973 P.2d 932, 936–37 (Utah 1998) (quoting *Barnard v. Sutliff*, 846 P.2d 1229, 1234–35 (Utah 1992)). The decision of whether to actually impose sanctions is ultimately within the district court's discretion. *See* Utah R. Civ. P. 11(c) ("If ... the court determines that subdivision (b) has been violated, the court *may* ... impose an appropriate sanction ...." (emphasis added)); *Crank v. Utah Judicial Council*, 2001 UT 8, ¶ 34, 20 P.3d 307 ("[I]t remains within the court's discretion to apply sanctions under rule 11(c) even if it finds a violation of rule 11(b)....").

Decisions regarding rule 11 sanctions are best left in the hands of the trial court. We therefore accord reasonable discretion to the trial court to determine when sanctions are useful and appropriate. When applying the appropriate standards of review, we grant considerable deference to the trial court's factual findings and some deference to the trial court's application of the facts when reaching its legal conclusion of whether rule 11 has been violated. We also afford substantial deference to the trial court's ultimate determination of when, and to what extent, sanctions are a useful tool in controlling abuses of the judicial process.

*Archuleta v. Galetka*, 2008 UT 76, ¶ 7, 197 P.3d 650.

## ANALYSIS

### I. Res Judicata

■ ¶ 11 Mrs. Gillmor first argues that the district court erroneously concluded that her claims are barred by the claim preclusion branch of res judicata. "Claim preclusion is premised on the principle that a controversy should be adjudicated only once," *Mack v. Utah State Dep't of Commerce*, 2009 UT 47, ¶ 29, 221 P.3d 194 (internal quotation marks omitted), and "reflects the expectation that parties who are given the capacity to present

their entire controversies shall in fact do so," *American Estate Mgmt. Corp. v. International Inv. & Dev. Corp.*, 1999 UT App 232, ¶ 12, 986 P.2d 765 (internal quotation marks omitted). Whether claim preclusion bars the relitigation of certain claims depends upon full satisfaction of a three-part test:

> First, both cases must involve the same parties or their privies. Second, the claim that is alleged to be barred must have been presented in the first suit or be one that could and should have been raised in the first action. Third, the first suit must have resulted in a final judgment on the merits.

*Mack*, 2009 UT 47, ¶ 29 (internal quotation marks omitted). Because the parties below contested only the second prong of claim preclusion, our analysis will focus on whether the claims at issue in this case could and should have been brought in either the 1984 or 2001 suits.[4]

 ¶ 12 "A claim or cause of action is the aggregate of operative facts which give rise to a right enforceable in the courts." *Id.* ¶ 30 (internal quotation marks omitted). "Claims or causes of action are the same as those brought or that could have been brought in the first action if they arise from the same operative facts, or in other words from the same transaction." *Id.* (citing Restatement (Second) of Judgments § 24 (1982)).[5] "What factual grouping constitutes a 'transaction,' . . . [is] to be determined pragmatically, giving weight to such considerations as whether the facts are related in

time, space, origin, or motivation[ and] whether they form a convenient trial unit. . . ." Restatement (Second) of Judgments § 24(2). *See generally id.* § 24 cmt. b (explaining what constitutes a transaction). Accordingly, "res judicata . . . turn[s] on the essential similarity of the underlying events giving rise to the various legal claims," *Mack*, 2009 UT 47, ¶ 30 (internal quotation marks omitted), or a common motivation behind those claims, *see* Restatement (Second) of Judgments § 24(2), "[r]ather than resting on the specific legal theory invoked," *Mack*, 2009 UT 47, ¶ 30 (alteration in original) (internal quotation marks omitted). "Defining the scope of a claim or cause of action is not an exact science and, in fact, is at times driven by the relative importance of the finality of judgment. When, as in this case, . . . real property is at issue, the need for finality is at its apex." *American*, 1999 UT App 232, ¶ 10 (citations omitted).

 ¶ 13 Although Mrs. Gillmor has alleged different legal theories in the present suit, we conclude that these theories "could and should have been raised" in either the 1984 or 2001 suits. *See Mack*, 2009 UT 47, ¶ 29 (internal quotation marks omitted). All three suits have had an identical motivation calculated to obtain a common goal: use of roads over the Richards property in order to more easily access the Gillmor property. Therefore, each suit has asserted the same claim. Further, Mrs. Gillmor has conceded that the legal theories at issue here were legally and factually available before the 1984

---

4. Neither party has ever contested that both the 1984 and 2001 suits resulted in a final judgment on the merits. And below, neither party challenged whether the parties here are either the same parties as or are in privity with the parties from the two prior suits. At oral argument before this court, Mr. Baird asserted for the first time that Mrs. Gillmor is not in privity with her husband, Mr. Gillmor. Because this argument was not properly preserved, we will not address it. *See* Utah R.App. P. 24(a)(5)(A) (requiring a party to show that the issue being appealed was preserved in the trial court); *Badger v. Brooklyn Canal Co.*, 966 P.2d 844, 847 (Utah 1998) (explaining preservation requirement and stating that "[i]ssues not raised at trial are usually deemed waived"); *State v. Marble*, 2007 UT App 82, ¶ 19, 157 P.3d 371 (declining to review on appeal an issue raised for the first time at oral argument).

5. In *Mack v. Utah State Department of Commerce*, 2009 UT 47, 221 P.3d 194, the Utah Supreme Court expressly adopted the transactional theory as articulated in the Restatement (Second) of Judgments § 24 (1982), concerning the same claim element of claim preclusion:

> Previously we have held that two causes of action are the same if they rest on the same 'state of facts,' and the evidence 'necessary to sustain the two causes of action' is of the same kind or character. *Schaer v. State*, 657 P.2d 1337, 1340 (Utah 1983). More recently, however, we have moved toward the transactional theory of claim preclusion espoused by the Restatement (Second).

*Id.* ¶ 30.

suit and, therefore, could have been pleaded in either of the two prior suits.

¶ 14 It appears that a claim based on public rights may have been intentionally ignored or strategically sacrificed in favor of asserting a private right. When the district court inquired why Mrs. Gillmor had not asserted public rights before, Mr. Baird speculated that omitting these theories may have been a strategic decision, stating that simultaneously asserting a public and private right to access "would have been pretty dicey." The district court then characterized Mrs. Gillmor's present suit as being a last resort to gain access in response to the less-than-favorable result of the 2001 suit: "[Mrs. Gillmor] argues that her present legal causes of action were utterly unnecessary until the Court of Appeals ruled against her, but that argument only suggests that litigation choices were made, as they should be, and not every possible theory was advanced." Further, the record indicates that the Gillmors sought a private right to access the Gillmor property over the Richards property, to the exclusion of a public thoroughfare, and that Mrs. Gillmor would prefer that the roads remain private. This is not only a strategic decision on how to present the claim, but it is also a choice as to the desired objective of the litigation. Whether "purposely or negligently," the Gillmors failed to assert all available theories supporting their claim "by all proper means within [their] control." *See American,* 1999 UT App 232, ¶ 12 (internal quotation marks omitted). They cannot "be permitted to ... relitigate the same matters between the same parties." *See id.* (internal quotation marks omitted). Nor may they now "pursue their claim ... through piecemeal litigation, [having offered] one legal theory to the court while holding others in reserve for future litigation," which are now being asserted because the first two suits have "prove[n] unsuccessful." *See id.* ¶ 14. Mrs. Gillmor cannot now be allowed yet another "attempt at substantially the same objective under a different guise." *See Wheadon v. Pearson,* 14 Utah 2d 45, 376 P.2d 946, 948 (1962). Accordingly, the district court correctly concluded that Mrs. Gillmor's claims are barred by res judicata.

## II. Rule 11 Sanctions

¶ 15 Both parties challenge the district court's decision concerning the imposition of sanctions. Rule 11(b) states in pertinent part,

(b) By presenting a pleading, written motion, or other paper to the court (whether by signing, filing, submitting, or advocating), an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; [and]

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]

Utah R. Civ. P. 11(b)(1)-(2). Each subpart of rule 11(b) provides a separate basis for sanctionable conduct that must be independently met. *See id.* R. 11(c); *Crank v. Utah Judicial Council,* 2001 UT 8, ¶ 33, 20 P.3d 307. We emphasize that "[d]ecisions regarding rule 11 sanctions are best left in the hands of the trial court." *Archuleta v. Galetka,* 2008 UT 76, ¶ 7, 197 P.3d 650. We therefore "afford substantial deference to the trial court's ultimate determination of when, and to what extent, sanctions are a useful tool in controlling abuses of the judicial process." *Id.*

### A. Rule 11(b)(2)

¶ 16 Mrs. Gillmor argues that the district court improperly imposed sanctions against Mr. Baird for violating rule 11(b)(2) of the Utah Rules of Civil Procedure by filing a claim that is not "warranted by existing law or by a nonfrivolous argument for [a change in] ... existing law." *See* Utah R. Civ. P. 11(b)(2). *See generally id.* R. 11(c)(2)(A) (stating that although sanctions may be imposed against attorneys or parties, sanctions may not be imposed against a represented party for violation of subsection 11(b)(2)). Whether a claim is warranted by existing law

or by a nonfrivolous argument for the change in existing law is not determined by whether the argument is the correct legal position but by whether it is "objectively reasonable under all the circumstances." *Barnard v. Sutliff,* 846 P.2d 1229, 1236 (Utah 1992). Here, the district court's determination that Mr. Baird had violated rule 11(b)(2) was premised upon the court's conclusion that Mrs. Gillmor's claims were barred by res judicata. *See generally Schoney v. Memorial Estates, Inc.,* 863 P.2d 59, 62 (Utah Ct.App.1993) (affirming trial court's imposition of rule 11 sanctions against plaintiff who attempted to relitigate identical claims that were clearly barred by res judicata). In view of our conclusion that Mrs. Gillmor's claims are barred by res judicata, the appropriate standard of review is whether the district court's decision to impose sanctions was an abuse of its discretion. *See Archuleta,* 2008 UT 76, ¶ 7.

¶ 17 The district court began its rule 11(b)(2) analysis by concluding that Mrs. Gillmor's claims were barred by res judicata: neither party had contested the privity and finality elements; and the present suit involved the same claim as the 1984 and 2001 suits because each suit claimed access to the Gillmor property based on facts and legal theories that had been available at those times. The district court wrote that it was "at a loss to understand how plaintiff could have brought the present action without violating [r]ule 11(b)(2) [because] once the three elements [of res judicata] are satisfied, [it was] unaware of any exceptions to application of the bar imposed by res judicata, *and plaintiff has not identified any such exception.*" (Emphasis added.)

¶ 18 The district court's finding that Mr. Baird did not present any legal authority in support of the purported exceptions to res judicata is particularly persuasive. Mr. Baird argues that "the mere fact that [his] view of the law was wrong cannot support a finding of a rule 11 violation." *See generally Barnard,* 846 P.2d at 1236. However, it is not that Mr. Baird's arguments below were wrong but that those arguments were not supported by any legal authority—especially given the fact that Mr. Baird had anticipated

the res judicata issue before filing this suit. In light of the filing of a claim barred by res judicata and the absence of any legal authority in support of Mr. Baird's arguments below concerning exceptions to res judicata, we cannot say that the district court abused its considerable discretion in imposing sanctions against Mr. Baird for violating rule 11(b)(2).

B. Rule 11(b)(1)

¶ 19 Defendants argue on cross-appeal that the district court improperly denied their motion for sanctions against both Mrs. Gillmor and Mr. Baird under rule 11(b)(1) for filing a claim with an improper purpose. *See* Utah R. Civ. P. 11(b)(1). *See generally id.* R. 11(c) (allowing sanctions to be imposed against attorneys and parties). Whether a party acted with an improper purpose is a question of fact, reviewed under the clearly erroneous standard. *See Pennington v. Allstate Ins. Co.,* 973 P.2d 932, 937 (Utah 1998) (characterizing a party's purpose under rule 11(b)(1) as an issue of intent, which is a question of fact reviewed under the clearly erroneous standard); *Edwards v. Powder Mountain Water & Sewer,* 2009 UT App 185, ¶ 25, 214 P.3d 120 ("We must uphold a trial court's factual findings regarding whether rule 11 has been violated unless the evidence clearly weighs against such findings."). "A factual finding is deemed clearly erroneous only if it is against the clear weight of the evidence," and "we will not overturn a trial court's factual findings if its account of the evidence is plausible in light of the record viewed in its entirety." *Pennington,* 973 P.2d at 937 (internal quotation marks omitted).

¶ 20 In denying Defendants' request to impose sanctions against Mrs. Gillmor and Mr. Baird for violating rule 11(b)(1), the district court wrote that it could "see no evidence of a purpose to harass, delay, . . . impose unnecessary cost[,] . . . or needlessly increase the costs of litigation." Rather, the district court stated that Mrs. Gillmor's purpose was clear: "to obtain access that has not been obtained through previously advanced theories." After reviewing the record, we cannot say that the district court's findings are against the clear weight of the

evidence. We, therefore, will not disturb the district court's decision not to impose sanctions against Mrs. Gillmor and Mr. Baird for violating rule 11(b)(1).

## CONCLUSION

¶ 21 The district court correctly concluded that Mrs. Gillmor's claims are barred by res judicata. All three suits brought by the Gillmors have asserted the same claim: use of the roads over the Richards property to more easily access the Gillmor property. And the theories alleged here were legally and factually available when the first suit was filed. Therefore, these theories could and should have been raised in one of the prior suits. The district court acted within its discretion in imposing sanctions against Mr. Baird for violating rule 11(b)(2) and denying sanctions under rule 11(b)(1).

¶ 22 Accordingly, we affirm.[6]

¶ 23 I CONCUR: PAMELA T. GREENWOOD, Senior Judge.

THORNE, Judge (concurring in part and dissenting in part):

¶ 24 I concur in the general statement of the law of res judicata and rule 11 sanctions as set out in the majority opinion but dissent from application thereof to the instant case. I disagree with the majority's conclusion that each of the three actions asserted sufficiently similar claims, *see supra* ¶ 13, and, that, therefore, the third action is barred by the claim preclusion branch of res judicata. The suits initiated in 1984 and 2001 were private claims, the first for a prescriptive easement or irrevocable license and the second for a declaration of rights under the easement agreement negotiated in the previous case. These private claims are different than and may be pursued separately from the public interest claim under Utah Code section 72–5–104 (the Dedication Statute) as initiated in the present suit. *See* Utah Code Ann. § 72–5–104 (2009).

¶ 25 Although the public interest claim could have been presented in either the 1984 or 2001 suit, I do not believe that it should necessarily have been raised in the previous actions for several reasons. First, neither Mr. Gillmor in his 1984 action nor Mrs. Gillmor in her 2001 action were obligated to bring a public claim—seeking a right for the members of the public to use the Richards property—in their pursuit of a determination of their own private right to use of the property. Indeed, the Gillmors' decision not to pursue a public claim under the Dedication Statute ought not preclude any member of the general public from initiating such a suit at a later time. The objective of claim preclusion is "that a controversy should be adjudicated only once," *see Mack v. Utah State Dep't of Commerce*, 2009 UT 47, ¶ 29, 221 P.3d 194 (internal quotation marks omitted). This, however, is not feasible in the present case where members of the public may still pursue a public claim regardless of prior private right litigation.

¶ 26 Application of claim preclusion to this matter would lead to an illogical result. A literal application of claim preclusion in the present case would have the effect of preventing all members of the public from bringing a public claim based on the res judicata ruling barring the Gillmors from pursuing such a public claim. Even if claim preclusion were applied only to the Gillmors, the majority's decision today would be illogical in that it would prevent the Gillmors from pursuing a claim which any other member of the public might bring seeking the declaration of a public right in this piece of property. Instead of ending a dispute about the rights pertaining to a parcel, the majority decision simply delays the resolution for another day.

¶ 27 Second, the private claims asserted in the 1984 and 2001 actions are inherently different and require the presence of different factual determinations than the present public claim under the Dedication Statute.[7]

---

**6.** We do not address Defendants' request for attorney fees under rule 33 of the Utah Rules of Appellate Procedure because it was inadequately briefed. *See generally Valcarce v. Fitzgerald*, 961 P.2d 305, 313 ("[A]n appellate court will decline to consider an argument that a party has failed to adequately brief.").

**7.** The 1984 action asserted a claim for prescriptive easement. To establish a prescriptive easement, a claimant "must establish a use that is

As such, I would reverse the district court's dismissal of Mrs. Gillmor's public claim on res judicata grounds.

¶ 28 Because I would reach a different conclusion on the issue of res judicata than the majority, it follows that Mrs. Gillmor's claim was asserted with a good faith argument against res judicata, *see* Utah R. Civ. P. 11(b)(2) (providing that rule 11 is violated when an attorney fails to make a reasonable inquiry to assure that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law"), is "objectively reasonable under all the circumstances," *Barnard v. Sutliff*, 846 P.2d 1229, 1236 (Utah 1992), and should not result in rule 11(b) sanctions. Even if I am wrong and have erroneously applied the claim preclusion branch of res judicata, this is not enough to support a rule 11 violation. *See id.* ("[T]he mere fact that the attorney's view of the law was wrong cannot support a finding of a rule 11 violation."). Accordingly, I would reverse the district court's decision concerning the imposition of sanctions.

open, notorious, adverse, and continuous for at least twenty years." *Edgell v. Canning*, 1999 UT 21, ¶ 8, 976 P.2d 1193. The 2001 action sought a declaration of rights under the easement agreement negotiated in the previous case. Neither of these two causes of action require, as does the present claim, proof that the property has been continuously used by the *public* as a *public thoroughfare*. *See Jennings Inv., LC v. Dixie Riding Club, Inc.*, 2009 UT App 119, ¶ 10, 208 P.3d 1077, *cert. denied*, 215 P.3d 161 (Utah 2009). "To satisfy the public thoroughfare element, [p]laintiffs must demonstrate proof of (i) passing or travel, (ii) by the public, and (iii) without permission." *Id.* ¶ 11.